UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LINDA SANTANGELO, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-828** |
| **STATE FARM FIRE & CASUALTY INSURANCE COMPANY** | **SECTION: "K"(1)** |

## ORDER AND REASONS

Before the Court is the Motion for Summary Judgment (Rec.Doc.No. 11) of Plaintiffs Linda and Robert Santangelo (collectively "Santangelo"), wherein they seek a declaration by the Court that they timely delivered their insurance premium to Defendant State Farm Fire and Casualty Company ("State Farm"),[1] and are covered under their flood insurance policy.[2]

---

[1] Defendant was incorrectly named as State Farm Fire & Casualty Insurance Company.

[2] When a claim involves recovery under the National Flood Insurance Program ("NFIP") for losses due to a flood, a court's exercise of federal question jurisdiction over that claim is rarely subject to attack. Based on 42 U.S.C. § 4072, the federal courts have original exclusive subject matter jurisdiction in cases arising out of the NFIP. *See Powers v. Austin-Gettys-Cohen Insurance Agency, Inc., et al.,* 2000 WL 1593401 (E.D. La. Oct. 24, 2000)(Duval, J.) (citing *Van Holt v. Liberty Mutual Fire Insurance Company,* 163 F.3d 161 (3rd Cir. 1998)).

1

Defendant State Farm, on the other hand, seeks a declaration by the Court that the policy was not in effect at the time of the Plaintiffs' loss.[3] After reviewing the pleadings, memoranda, and relevant law, the Court hereby denies Plaintiffs' motion and grants summary judgment in favor of Defendant for the reasons assigned below.

## I. BACKGROUND

Linda and Robert Santangelo own rental property located at 5816 Arlene Street in Metairie, Louisiana. *See* Compl., at ¶ 4 (Rec.Doc.No. 1). Plaintiffs' primary residence is located at 9517 Alhambra Court, River Ridge, Louisiana. *See Id.*, at ¶ 1. Plaintiffs submit that along with the purchase of the rental property in 1983, they purchased a flood insurance policy from Defendant State Farm, which was a Write-Your-Own ("WYO") Program carrier participating in the National Flood Insurance Program ("NFIP") pursuant to the National Flood Insurance Act of 1968.

Defendant maintains that on June 6, 2005, a renewal notice was prepared and then sent to Plaintiffs at their primary residence. The Renewal Certificate indicates that a premium payment of $397.00 was due on July 19, 2005, so that coverage would be extended from July 19,

---

[3] The Fifth Circuit states that "where one party moves for summary judgment the district court, in an appropriate case, may grant summary judgment against the movant, even though the opposite party has not actually filed a motion for summary judgment." *Landry v. G.B.A*, 762 F.2d 462, 464 (5th Cir. 1985)(citing Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2720)).

2005, to July 19, 2006. *See* Opp. Mot. Summ. J., Exhibit 1 (Rec.Doc.No. 20).

Plaintiffs allege that having received this notice in middle to late June 2005, they mailed check No. 3432, dated June 27, 2005, from Destin, Florida to State Farm. Defendant maintains that it did not receive this check, and on July 25, 2005, it prepared and sent an Expiration Notice, which indicated the following:

> If the premium payment is received within 30 days of the expiration date, continuous coverage will be provided. If payment is received after 30 days following the expiration date but within 90 days, this policy will be reinstated effective 12:01 A.M. 30 days following the receipt of the payment.
>
> This policy expired at 12:01 A.M. on JUL 19 2005. If payment is NOT received within 90 days following the expiration date, you must apply for a new policy.

*See* Opp. Mot. Summ. J., Exhibit 3 (Rec.Doc.No. 20).

Plaintiffs argue that they did not receive the Expiration Notice, but on August 25, 2005, they received an answering machine message from their insurance agent Gary Hughes indicating that the check had not been received. When Plaintiffs discovered their insurance premium had not been received, "Ms. Santangelo appeared in person at Mr. Hughes' office on Friday, August 26, to advise that she had previously mailed the check," and that "she then issued a replacement check for the flood premium." *See* Mot. Summ. J., Statement of Uncontested Material Facts, at ¶ 7 (Rec.Doc.No. 11).

Plaintiffs further contend that on August 29, 2005, because of Hurricane Katrina and the pump station shutdown in Metairie, they sustained substantial damage to their rental property. Defendant submits that it informed Plaintiffs that because the premium payment was

received on August 26, 2005, 38 days after the policy expiration date, the effective date of the policy was September 25, 2005. Thus, Defendant maintains that Plaintiffs' flood policy was not in effect on August 29, 2005. On the other hand, Plaintiffs suggest that the policy was in effect on August 29, 2005, because they had timely mailed their premium check to State Farm on June 27, 2005.

## II. LEGAL STANDARD

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden shifts to the non-movant "to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.  "[M]ere allegations or denials" will not defeat a well-supported motion for summary judgment.  Fed. R. Civ. P. 56(e). Rather, the non-movant must come forward with "specific facts" that establish an issue for trial. *Id*.

When deciding a motion for summary judgment, the Court must avoid a "trial on the affidavits." *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are tasks for the trier-of-fact. *Id*.  To that end, the Court must resolve disputes over material facts in the non-movant's favor. "The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed."  *Leonard v. Dixie Well Service & Supply, Inc*., 828 F.2d 291, 294 (5th Cir. 1987).

### III. ANALYSIS

The question before the Court is whether Plaintiffs' flood insurance policy was in effect at time their rental property flooded despite the fact that Defendant did not receive the premium until August 26, 2007. Plaintiffs submit that by mailing the premium check on June 27, 2005, they complied with the renewal provisions of the SFIP, and as a result, the flood policy should be deemed in effect at the time of the loss as a matter of law.

**A.	National Flood Insurance Program**

The National Flood Insurance Act of 1968 ("the Act") established the National Flood Insurance Program. 42 U.S.C. §§ 4001-4129. Two of the main purposes of the National Flood Insurance Act are to "substantially increase the limits of coverage authorized under the national flood insurance program" and to "require States or local communities, as a condition of future Federal financial assistance, to participate in the flood insurance program and to adopt adequate flood plain ordinances ... consistent with Federal standards to reduce or avoid future flood losses." 42 U.S.C. § 4002(b)(1) and (3). Furthermore, the Act is meant to "encourage State and local governments to make appropriate land use adjustments to constrict the development of land which is exposed to flood damage and minimize damage caused by flood losses." 42 U.S.C. § 4001(e).

Initially, the National Flood Insurance Program was operated primarily through the National Flood Insurance Association, an incorporated pool of private insurance companies. *Spence v. Omaha Indemnity Ins. Co.,* 996 F.2d 793, 794 n. 1 (5th Cir. 1993). Pursuant to this arrangement, if a pool company refused to pay a claim under the flood insurance policy, the insured was permitted to sue the pool insurance company for the "disallowance or partial disallowance of the claim" in Federal District Court. 42 U.S.C. § 4053. On January 1, 1978 HUD terminated the National Flood Insurance Association program and assumed all operational responsibilities, making the Federal Emergency Management Agency ("FEMA") principally

responsible for its operation, pursuant to 42 U.S.C. § 4071. *Spence,* 996 F.2d at 794, n. 1. Thus, the new arrangement, referred to as Part "B" of the NFIP, is administered by FEMA through the Flood Insurance Administration.

In 1983, FEMA promulgated regulations that provided for claims adjustment by private insurers operating as "Write-Your-Own" insurance companies ("WYO's"). 44 C.F.R. §§ 61.13(f), 62.23(a). The flood insurance policies issued under the NFIP are called Standard Flood Insurance Policies ("SFIP"). An SFIP may be purchased directly from FEMA, see 44 C.F.R. § 62.3(c) or through a WYO carrier. 44 C.F.R. § 61.13(f). The relationship between FEMA and WYO carriers is defined in 44 C.F.R. Pt. 62., App. A.

Premiums paid are remitted to the Flood Insurance Administration. 44 C.F.R. Pt. 62, App. A, Article VII(b). WYO companies also draw money from FEMA through letters of credit to disburse claims. Thus, regardless of whether FEMA or WYO company issue a flood insurance policy, the United States Treasury Funds are used to pay the insured's claims. *See Gowland v. Aetna,* 143 F.3d 951, 955 (5th Cir.1988); *In re Estate of Lee,* 812 F.2d 253,256 (5th Cir.1987). WYO companies shall act as "fiscal agents" of the United States, but not as "general agents." 42 U.S.C. § 4071(a)(1); 44 C.F.R. § 62.23(g). WYO companies issue SFIP's in their own names. 44 C.F.R. § 61.13(f), 62.23(a).

However, in order to maintain control over the provisions of the flood insurance policy, the government does not allow the WYO companies to alter the SFIP's. 44 C.F.R. §§ 61.4(b), 61.13(d). FEMA regulations establish the terms of the SFIP, the rate structures, and premium costs. 42 U.S.C. § 4013. Yet, WYO companies have substantial autonomy in the marketing and

handling of their claims. "In carrying out its function under this subpart, a WYO Company shall use its own customary standards, staff and independent contractor resources, as it would in the ordinary and necessary conduct of its own business affairs, subject to the Act and regulations prescribed by the Administrator under the Act." 44 C.F.R. § 62.23(e).

With respect to what law applies in interpreting the provisions of the SFIP, the Honorable Judge Berrigan has articulated the standard to be applied as follows:

> It is well established that the federal statutory and common law governs the interpretation of the SFIP. *Linder and Assocs., Inc. v.. Aetna Cas. and Sur. Co.,* 166 F.3d 547, 550(3rd Cir.1999) (citations omitted). Thus, "neither the statutory nor decisional law of any particular state is applicable to [the SFIP]." *Id* . (quoting *Sodowski v. National Flood Ins. Program,* 834 F.2d 653, 655 (7th Cir.1987) (quotations omitted)).
> Under the federal common law, the SFIP is construed using standard insurance law principals. *Id.* (citations omitted). These principals dictate that the SFIP is to be interpreted according to its plain, unambiguous meaning, keep interpretation should be 'uniform throughout the country' and that 'coverage should not vary from state to state.' " *Id.* (quoting *Nelson v. Becton,* 929 F.2d 1287, 1291 (8th Cir.1990)). Nevertheless, ambiguities should be construed in favor of the insured and against the insurer. *Id.* (citing *Aschenbrenner v. United States Fidelity & Guar. Co.,* 292 U.S. 80, 84-85, 54 S.Ct. 590, 78 L.Ed. 1137 (1934)).

*Rodgers v. Allstate Ins. Co.*, 2007 WL 1029480 (E.D. La. Mar. 30, 2007).

**B.     Renewal of SFIP**

As a general rule, the terms of the SFIP promulgated FEMA are strictly construed and enforced because claims under an SFIP directly affect the United States Treasury. *Forman v.*

*FEMA*, 138 F.3d 543, 545 (5th Cir. 1998)(citing 44 C.F.R §§ 61.13(a), (d), (e)). Regarding flood policy renewal, the Standard Flood Insurance Policy ("SFIP") states,

> VII. General Conditions
> ....
> H.   Policy Renewal
>   1.   This policy will expire at 12:01 a.m. on the last day of the policy term.
>   2.   [Insurer] must receive the payment of the appropriate renewal premium within thirty days of the expiration date.

44 C.F. R. Pt. 61, app. A(1), art. VII(H).

Plaintiffs argue that the mailbox rule should apply, and that by operation of law the Court should find that they were in compliance with the SFIP's renewal provisions. The Court finds that the plain language of the SFIP's renewal provisions requires that the premium be actually received by the WYO insurer within thirty days of the expiration date.

This interpretation of the SFIP is bolstered by a examination of a prior version of the renewal provision. The renewal provision of the SFIP was amended by FEMA on October 12, 2000. The amendment redacted the following language from the prior version: "If the renewal premium payment is mailed by certified mail to us prior to the expiration date, it shall be deemed to have been received within the required 30 days."[4] *See* Standard Flood Insurance Policy, 65

---

[4] Prior to the 2000 amendment, the renewal provision of the SFIP read as follows:

> This policy shall not be renewed and the coverage provided by it shall not continue into any successive policy term unless the renewal premium payment is received by us within 30 days of the expiration date of this policy,...If the renewal premium payment is mailed by certified mail to us prior to the expiration date, it shall be deemed to have been received within the required 30 days.

Fed. Reg. 60,758 (Oct. 12, 2000).

The prior version demonstrates that FEMA contemplated a distinction between actual receipt and mailing of the premium. Moreover, the redaction shows that FEMA intended to require actual receipt of the premium payment within thirty days of the expiration date. Here, the parties have stipulated that Plaintiffs mailed the check prior to the expiration date, but that it was not received within thirty days of the expiration date. *See* Mot. Continue, at p. 2 (Rec.Doc.No. 29). Thus, the Court finds that Plaintiffs did not effectively renew their policy by mailing their premium check prior to the expiration date of the policy because the payment was not received by the insurer until thirty days following the expiration date.

**C.     Effective Date of SFIP**

Having determined that the June 27, 2005, mailing of the premium check was not effective to renew Plaintiffs' flood policy, the Court must now determine the effective date of the policy when the premium was paid on August 26, 2005. Federal regulations establish the effective date and time of coverage for any new SFIP, added coverage, or increase in the amount of coverage as follows:

> [The effective date of the SFIP is] 12:01 a.m. (local time) on the 30th calender day after the application date and the presentment of payment of premium; for example, a flood insurance policy applied

---

44 C.F.R. Pt. 44, app. A(1), at 297 (1992); *see also Foster v. Federal Emergency Management Agency*, 908 F.2d 128, 132 (4th Cir. 1993) (citing 53 Fed. Reg. 16, 269 (1988)).

>    for with the payment of the premium on May 1 will become effective
>    at 12:01 a.m. on May 31.

44 C.F.R. § 61.11. Because the policy expired, and the premium was paid on August 26, 2005, the Court finds that the effective date of Plaintiffs' flood policy was September 25, 2005. Thus, the flood damage that occurred to Plaintiffs' home as a result of Hurricane Katrina was not covered under the State Farm issued SFIP.

**D.     Expiration Notice**

The parties have stipulated that State Farm sent an Expiration Notice to Plaintiffs on July 25, 2005, indicating that the flood policy lapsed for non-payment of premium. *See* Mot. Continue, at p. 2 (Rec.Doc.No. 29). Moreover, the parties have stipulated that Plaintiffs did not receive the Expiration Notice, but were informed by State Farm's agent on August 25, 2005, that the premium check had not been received by State Farm. *Id.* Notably, Plaintiffs concede that they received a renewal notice that indicated a premium payment was due on August 19, 2005. *See* Opp. Mot. Summ. J., at p. 2 (Rec.Doc.No. 20).

The SFIP provides for an extension of the period to forward a renewal premium if it is discovered that the WYO did not send a renewal notice to the insureds. 44 C.F.R. Pt. 61 app. (A)(1), art. VII(H). This extension is not applicable to the instant case, and no such extension is granted with respect to non-receipt of a notice of expiration. Defendant cites Louisiana statutory

law in support of its argument that the Expiration Notice was sent timely;[5] however, such compliance is not necessary in the SFIP context because federal regulations exclusively establish the effect of non-payment of a renewal premium. 44 C.F.R. Pt. 61, app. (A)(1), art. IX ("[The SFIP] and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968...and Federal common law."); *see also Wright v. Allstate Ins. Co.*, 415 F.3d 384 (5th Cir. 2005). Thus, the Court finds that Plaintiffs' non-receipt of the Expiration Notice does not make the cancellation of the policy ineffective. Accordingly,

**IT IS ORDERED** that Defendant's cross-motion for summary judgment is **GRANTED** and Plaintiffs' action is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, on this  6th  day of June, 2007.

> **STANWOOD R. DUVAL, JR.**
> **UNITED STATES DISTRICT COURT JUDGE**

---

[5] Citing La. R.S. § 22:636, Defendant argues that "[u]nder Louisiana law, to be effective, a notice of cancellation for non-payment of premium must be mailed to the insured at the address shown on the policy at least ten days prior to cancellation, accompanied by the reason therefore." Opp. Mot. Summ. J., at p. 7 (Rec.Doc.No. 20).